UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HARI-AMAN JAMES,<br><br>     Plaintiff,<br><br>  - against -<br><br>NEW YORK CITY HEALTH +<br>HOSPITALS CORP. OFFICE OF LEGAL<br>AFFAIRS CLAIMS DIVISION,<br><br>     Defendant. | **ORDER**<br><br>23 Civ. 1206 (PGG) (OTW) |

PAUL G. GARDEPHE, U.S.D.J.:

   In this action, pro se Plaintiff Hari-Aman James – a former clerical associate at New York City Health + Hospitals Lincoln Medical Center ("HHC") – raises claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (the "ADEA"), and the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d et seq. ("HIPAA") against Defendant New York City Health and Hospitals Corp.  (Cmplt. (Dkt. No. 9-1))

   Defendant moved to dismiss (Def. Mot. (Dkt. No. 10), and Plaintiff moved for partial summary judgment.  (Pltf. Mot. (Dkt. No. 15))  This Court referred both motions to Magistrate Judge Ona Wang for a Report and Recommendation ("R&R").  Judge Wang recommends that Defendant's motion be granted (MTD R&R (Dkt. No. 51), and that Plaintiff's motion be denied.  (MSJ R&R (Dkt. No. 53))

   For the reasons stated below, Defendant's motion to dismiss will be granted except as to Plaintiff's Title VII retaliation claim, and Plaintiff's motion for partial summary judgment will be denied.

## BACKGROUND

## I.    FACTS[1]

Plaintiff James identifies as a "Black American." (Cmplt. (Dkt. No. 9-1) at 4)[2]

James was employed at HHC from 1987 to December 30, 2022. At retirement, he held the

position of Clerical Associate Level III in the Patient Accounts/Finance Department, and worked

the "Tour 1" shift – from midnight to 8:00 a.m. (Id.)

### A.    2015 Timecard Dispute

James alleges that on June 10 and 11, 2015, Angel Ruiz – manager of the Patient

Accounts/Finance Department – "tampered" with James's "official time record." (Id.) On June

15, 2015, James sought a meeting with Ruiz "to discuss the altered time record," but "Ruiz

verbally threatened [James] with false charges of abandonment of post," and "[n]o mention was

made of the altered time record." (Id.) James states that Ruiz is Hispanic. (Id.)

Between June and July 2015, James repeatedly sent emails to managers in his

department requesting an investigation into his allegedly altered time record, but "[n]o one in

supervision . . . responded to [James's] emails." (Id.) During this same time period, James's two

supervisors were female and Hispanic. (Id. at 5)

On September 26, 2015, James was charged with "abandon[ing] [his] post," and

he was suspended without pay for 30 days. (Id.) James says that the alleged abandonment took

---

[1] Because the parties have not objected to Judge Wang's account of the facts, this Court adopts her factual account in full. See Silverman v. 3D Total Solutions, Inc., No. 18 CIV. 10231 (AT), 2020 WL 1285049, at *1 n.1 (S.D.N.Y. Mar. 18, 2020) ("Because the parties have not objected to the R&R's characterization of the background facts . . . , the Court adopts the R&R's 'Background' section. . . ."); Hafford v. Aetna Life Ins. Co., No. 16-CV-4425 (VEC)(SN), 2017 WL 4083580, at *1 (S.D.N.Y. Sept. 13, 2017) ("The parties do not object to the Magistrate Judge's . . . recitation of the facts of this case, and the Court adopts them in full.").

[2] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

place at "the same time [James] alleges [that Ruiz] tampered with [his] time record." According to James, the "suspension was due to retaliation for reporting the improper time record revision, harassment and threatening outside involvement." (Id.)

On September 28, 2015, James attended "a labor relations meeting" to discuss the "particulars" of his suspension, and "the charge of abandonment of post was immediately dismissed." (Id.) "No one at the meeting responded to [James's] request for charges to be filed against [Ruiz] for making false statements, harassment and filing false charges," however. (Id.) James also says that he requested that HHC's Office of Labor Relations arrange for a New York City Office of Administrative Trials and Hearings ("OATH") hearing to clear his "record of the false suspension and to begin the process of recovering lost wages."[3] (Id. at 5-6)

After returning to work, James "was reassigned to a less favorable tour (tour2)," his "work assignment changed[,] . . . [his] supervisory duties were revoked . . . . , and from that point forward" he "began receiving poor performance evaluations." (Id. at 5) James also complains that HHC's Office of Labor Relations did not arrange for "the requested [OATH] hearing." (Id. at 6)

In a January 13, 2017 email to Paula Mandel – the director of the Patient Accounts/Finance Department – James requested "a vehicle for recovery of lost wages due to the suspension[,] [and] inquir[ed] about the status of the [] investigation regarding the altered time record." (Id. at 4, 6) "At this time," James "also made a complaint to [HHC] alleging discrimination [and] retaliation from other defendants within the Patient Accounts/Finance [Department]." (Id. at 6) James's email and complaint about alleged discrimination and retaliation were ignored. (Id.) On March 3, 2021, James delivered "memorandums" to HHC's

---

[3] James does not say to whom he made this request.

"HR [and] Labor Relations departments addressed to their respective directors inquiring [about] the status of the tentative [OATH] hearing [concerning his] suspension." James received no response. (Id.) When James went to the Office of Labor Relations, he was told that there was no record of his suspension. (Id.)

### B.    James Is Denied Overtime in 2021

In July 2021, HHC supervisor Jocelyn Peri told James that overtime pay was no longer available on the Tour 1 shift.[4] (Id. at 6, 8) According to Peri, Coordinating Manager Rosario Solis of the Patient Accounts/Finance Department had determined that overtime pay would no longer be available due to "additional [and] adequate staffing." (Id. at 6) James states that Solis is Hispanic and that "Hispanic supervisors from the previous tour worked overtime on [Tour 1] regularly, continually[,] and were not restricted in any way." (Id.) James also states that managers have informed him in the past that clerks have priority over supervisors for overtime assignments. (Id.) James further complains that another Hispanic employee from outside his department – Hospital Care Investigator Yolanda Del Rios – was allowed to work overtime on Tour 1 while James was denied that opportunity. (Id.)

On December 15, 2021, James observed a Hispanic employee[5] working overtime on Tour 1, and he asked Peri if overtime was once again available on Tour 1. (Id. at 8) Peri subsequently approved James's request to work overtime. (Id.)

### C.    October 11, 2021 Encounter with Officer Torres

On October 11, 2021, James alleges that HHC Police Officer Torres "disrupted his work station [and] committed an act of stalking immediately []after." (Id. at 7) On October

---

[4] The record does not reveal when James returned to the Tour 1 shift.
[5] James does not identify the Hispanic employee he observed.

12, 2021, James filed a workplace violence incident report concerning Torres's conduct. (Id.) James notes that Torres is Hispanic. (Id.)

On November 29, 2021, HHC Police Director Juan Toranzo informed James that his complaint was found to be unsubstantiated, even though HHC Investigator Fanay Sandoval-Aleman had told James that his version of the incident was captured and confirmed on camera. (Id.) Noting that Toranzo is Hispanic, James alleges that the rejection of his complaint was the result of discrimination. (Id.) James also alleges that – during this same time period – Glendalis Sanchez – an Hispanic employee – "had an incident [that] was resolved within several days."[6] (Id.)

### D.    James's December 10, 2021 Complaints to Corporate Compliance

In a December 10, 2021 email, James requested the assistance of the Office of Corporate Compliance "due to repeated [and] ongoing inaction from [HHC] management in multiple departments regarding alleged violations of: Civil Service 7, 7.5 rules, NYC Health + Hospitals Personnel Rules and Regulations, NYC Health + Hospitals Principles of Professional Conduct ("POPC"), Lincoln Hospital-Administrative Policy and Procedure Manual, Title VII [and] the ADEA." James also emailed copies of his request to the Office of the HHC Inspector General and the Lincoln Medical Center Human Resources Administration. (Id. at 7-8) Ilene Wikler – an Executive Compliance/Privacy Officer at the Office of Corporate Compliance – contacted James later that day, but she did not address any of his "complaints of time record tampering, harassment [and] retaliation." (Id. at 8)

---

[6] The record does not disclose the nature of this incident.

E.     **2022 Overtime Denial and Unsuccessful Job Application**

On March 11, 2022, James "was prohibited from working scheduled overtime by supervisor Jocelyn Peri." (Id.) Coordinating Manager Solis told James that the overtime prohibition was due to James's violation of time and leave policy, in connection with a sick day that James had taken earlier that week. (Id. at 8-9) James asserted that he "[was] not on time [and] leave restriction and asked to review the policy." (Id. at 9)

On March 20, 2022, supervisor Jameika Ingram told James that he "would have to be on time for overtime from that point forward as per [Solis,] or be in violation of the time [and] leave policy." (Id.) James asserts that Ingram had previously told him that "being late for overtime was acceptable." (Id.)

On March 24, 2022, James met with Alejandro Vicente – Administrator of the Patient Accounts/Finance Department – and Coordinating Manager Maria Velez to discuss why his scheduled overtime had been canceled. (Id.) When James asked to see the time and leave policy that he had allegedly violated, he was given a March 26, 2004 document entitled "Clerical Overtime." (Id.) James alleges that "no Hispanic employee has ever received such a document," and that "there is no such policy." (Id.) At this meeting, Vicente explained that tour supervisors were allowed to work overtime in July 2021 (while James's overtime was restricted) because they are able to work "on the departmental work queue[s]."[7] (Id.) Velez then reminded Vicente that James was also able to work on "the work queue[s]." (Id. at 9-10) Vicente responded that he was not aware of that fact, an assertion that James claims is not true. (Id. at 10)

Shortly after Ingram was made Tour 1 supervisor on April 1, 2022, James asked to be scheduled for voluntary overtime. (Id.) Ingram denied James's request, citing his

---

[7] The record does not disclose what "departmental work queues" are.

"'productivity.'" James says that his previous supervisor, Peri, had no issues with his productivity, and that Ingram had no issues with his productivity until Coordinating Manager Solis "appeared." (Id.) James notes that both Peri and Ingram are Black. (Id.)

On April 7, 2022, Ingram and Solis issued a "counseling notice" to James, citing issues regarding his "[t]ime [and] [l]eave and '[p]roductivity.'" (Id.) The counseling notice was retracted on April 9 or 10, 2022, after James warned Ingram and Solis about filing false charges regarding his productivity. (Id.) On April 11, 2022, James was issued a revised counseling notice regarding his "[t]ime [and] [l]eave," but omitting the productivity charge. (Id.) According to James, "no counseling session has ever been scheduled for a Hispanic employee due to 'productivity.'" (Id.) James contends that Solis had instructed Peri and Ingram to harass him. (Id.)

On April 15, 2022, Tour 2 Coordinating Manager Ana Guerrero reminded James that he was scheduled to work voluntary overtime, which James performed. (Id. at 11) Guerrero – like Solis – is a coordinating manager in James's department, but she "had no issue with [James] working overtime due to a time [and] leave restriction or any other reason." (Id.)

In an April 28, 2022 email, Patient Accounts/Finance Department Administrator Vicente alerted James to "a Clerical Associate LV IV employment opportunity." (Id.) While James alleges that he is fluent in Spanish (id. at 4), he asserts that the job posting's requirement that applicants speak Spanish "appears to be discriminatory in nature," because "[t]his is America, English is the national language, and all the workstations have Cyracom (live translator available) phones." (Id. at 11) In any event, although James "speaks Spanish and applied for the same position over a year prior," he "was never called or considered for the position." (Id.)

According to James, "only Hispanics are considered for in-house hiring in the Patient Accounts/Finance [Department]." (Id.)

On May 8, 2022, James asked Steve Mair, the then-Director of Fiscal Affairs at HHC, for his help "in managing discrimination." James was told that Mair "does not deal with the clerical team directly." (Id.)

On May 19, 2022, James had a counseling session with Solis and Mair to address his tardiness and absenteeism. (Id. at 12) At this meeting, James agreed to address his tardiness and to seek Family Medical Leave Act leave. Solis and Mair told him that overtime would be made available to him once a two-to-three week "period of good attendance was completed." (Id.)

On June 23, 2022, James attended a follow-up counseling session, at which Mair "amended the original counseling document to include a 90-day monitoring period." (Id.) James alleges that Mair altered the original date of his counseling session in order to extend the period of his overtime restriction. (Id.) James also alleges that the counseling session was not proper, because Patient Accounts/Finance Department Director Mandel "was listed as a required attendee" but "was not present." (Id.)

### F.    James's EEOC Inquiries

Between December 6, 2021 and April 30, 2022, James filed three inquiries with the Equal Employment Opportunity Commission (the "EEOC").[8] (See id. at 8-12) ("[o]n or

---

[8] In its online public portal, the EEOC offers the opportunity to submit an "Online Inquiry," which is designed to assist employees in deciding whether to file a formal charge of discrimination with the agency. EEOC Public Portal, U.S. Equal Employment Opportunity Commission, https://www.eeoc.gov/eeoc-public-portal (last visited Mar. 26, 2025) (under the heading "How to Use the EEOC Public Portal to Submit an Online Inquiry," explaining that employees "will be asked a few questions to help determine if the EEOC is the right federal agency to handle a potential complaint involving employment discrimination."). The EEOC's

around late December 2021 . . . [James] made an inquiry and requested the assistance of the

[EEOC]," and he periodically "added" allegations to the "[EEOC] inquiry" between March 11,

2022 and June 23, 2022); (Pltf. Am. Decl. (Dkt. No. 18) at 10-19) (three sets of forms, each

labeled "EEOC (Inquiry)," were submitted by James to the EEOC on December 6, 2021, April

18, 2022, and April 30, 2022, respectively)[9]

### 1.    December 6, 2021 EEOC Inquiry

In his December 6, 2021 inquiry, James asserts that he "was told [that] there was

no longer overtime on [his] tour of duty due to adequate staffing," but that "Hispanic supervisors

from the previous tour routinely work overtime on [his] tour," and "employees lower in rank are

---

website warns, however, that "[s]ubmitting an inquiry is different from filing a charge of
discrimination," because "[a] charge of discrimination is a signed statement asserting that an
organization engaged in employment discrimination.  It requests EEOC to take remedial action."
Id.; see also How to File a Charge of Employment Discrimination, U.S. Equal Employment
Opportunity Commission, https://www.eeoc.gov/how-file-charge-employment-discrimination
(last visited Mar. 26, 2025) (explaining that a "Charge of Discrimination can be completed
through our online system after you submit an online inquiry and we interview you.").

[9] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a
district court may consider the facts alleged in the complaint, documents attached to the
complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v.
MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc.,
282 F.3d 147, 153 (2d Cir. 2002) and Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).
"Where a document is not incorporated by reference, the court may never[the]less consider it
where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document
'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir.
2006)). A court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt
v. Gluck, No. 03-CV-597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003)
(quoting Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)). "In situations where
exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial
notice of the records and reports of the relevant administrative bodies, as well as the facts set
forth therein." Chidume v. Greenburgh-N. Castle Union Free Sch. Dist., No. 18-CV-01790
(PMH), 2020 WL 2131771, at *2 (S.D.N.Y. May 4, 2020).

Here, the Complaint repeatedly references James's EEOC inquiries.  (See Cmplt. (Dkt. No. 9-1)
at 8-12)  Accordingly, James's EEOC inquiries are incorporated by reference in the Complaint
and may properly be considered in connection with HHC's motion to dismiss.  See DiFolco, 622
F.3d at 111.

supposed to be considered first for overtime when needed before supervisors." (Pltf. Am. Decl. (Dkt. No. 18) at 11)  James goes on to say that he "ceased working overtime on Tour 1" on August 10, 2021, and did not resume working overtime until December 2021.  (Id. at 12)  He was thus "unfairly restricted from doing overtime on Tour[]1 for over four (4) months."  (Id.) James identifies "Jose Gomez, Betsy Ycaza, and Yolanda, last name unknown" as others "in a similar situation treated the same, better, or worse than" him.  (Id.)

James also complains that in 2015, after he "inquired as to who tampered with one of [his] time records," he was "suspended without pay for allegedly abandoning [his] post during the same time period in which [his] record was tampered [with]."  (Id. at 11)

### 2.    April 18, 2022 EEOC Inquiry

In his April 18, 2022 EEOC inquiry, James asserts that HHC Police Officer Torres "harassed and stalked [him] because of [his] race."  (Id. at 14)  According to James, on October 11, 2021, Officer Torres approached his work station with a patient and stated that the patient needed to see a doctor.  (Id. at 16)  After James told Officer Torres that the patient had already been registered for assessment and treatment, Torres "banged loudly and forcibly on the protective plastic shield surrounding [James's] workstation" and said, "[W]hy didn[']t you tell me she was already registered?"  He then walked away.  (Id.)  James asserts that "Torres returned shortly thereafter with another officer and asked [for James's] name and title," which James provided.  (Id.)  James says that he "thought it out of the ordinary for two (2) officers to be required to ask an employee [his] name [and] title," and "felt this was an attempt to intimidate [him]."  (Id.)  After the officers left, James sought out Officer Torres's name and shield number.  (Id.)  While James was obtaining Torres's name and shield number, Torres approached James "in a threatening manner."  (Id.)  When James walked away, "[T]orres followed [him] into the []

corridor in an apparent attempt to provoke [him].'" (Id.) James asserts that this incident ended only after Torres's police colleagues advised Torres to return to his workstation. (Id.)

James goes on to say that he "filed a workplace violence form" concerning this incident, and then "sent constant emails for several months" about the incident. But HHC Police Director Toranzo ultimately concluded that James's "complaint was unsubstantiated," even though his "narrative was confirmed on camera by [] hospital police investigator Fanay Sandoval-Aleman." (Id. at 14-16) James states that his "complaint was [found] unsubstantiated because of race and because Juan Toranzo is attempting to protect one of his officers." (Id. at 14) James also asserts that "a Hispanic employee" had a similar experience at about the same time, and her case "was investigated and resolved while [his] case was apparently being ignored." (Id. at 16) According to James, no "Hispanic employee has been treated this way." (Id.)

### 3.    April 30, 2022 EEOC Inquiry

In his April 30, 2022 EEOC inquiry, James asserts that he applied for a promotion at Lincoln Medical Center – the HHC facility where he worked – but was never contacted about the position, despite having applied for the same job in 2021, and despite being told "that someone would call [him.]" (Id. at 18) James notes that the job posting states that "Spanish is required," and he goes on to say that "the job posting and requirements are discriminatory," because they exclude "non-[S]panish speaking/non-[H]ispanic persons from advancing." (Id.) According to James, "[a]ll Hispanic employees are treated better," and there is "an ongoing culture of discrimination & exclusion" at Lincoln Medical Center. (Id. at 19)

### G.    James's Office of Equal Employment Opportunity Complaints

Between April 12, 2022 and June 29, 2022, James filed three complaints with the HHC Office of Equal Employment Opportunity ("EEO"). (See id. at 4-9) The internal EEO

complaints are premised on James's request to work overtime in March 2022,[10] the subsequent

counseling sessions, his complaints regarding the alleged overtime policy during March and

April 2022, and supervisors' refusal to assign him overtime between March and June 2022.  (See

id.)

### H.    James's EEOC Charge

On July 4, 2022, James filed a charge of discrimination with the EEOC.  (Cmplt.

(EEOC Charge) (Dkt. No. 9-1) at 16)  In his charge, James states the following:

> I am an individual of mixed races and a non-Hispanic.  I am currently employed as a
> Clerk for the above-named entity ("Respondent").  I believe I am being discriminated
> against on the basis of my race because Respondent denied me over-time compar[ed] to
> my peers who are Hispanics.  Respondent asserted [to] me that we had "adequate
> staffing" and that over-time was not needed, however, I later learned that my peers were
> offered over-time.  Furthermore, after my initial complaint of being restricted to over-
> time, I was being retaliated against.  Respondent suspended me without pay because I
> was alleged for having abandoned my post, but this is not true.  The supervisors had
> tampered [with] my time-records, in which coincided during the time that I was alleged
> for abandoning my post.  Its retaliations were acts of race and national origin
> discrimination because I am not Hispanic.  Based on the above, I allege Respondent
> subjected me to discrimination, in violation of Title VII of the Civil Rights Act of 1964,
> as amended ("Title VII").

(Id.)

In response to a question on the complaint form concerning the basis for his

discrimination complaint, James wrote "National Origin, Race"; in response to a question about

the dates on which the discrimination took place, James wrote "12/03/2021."  (Id.)

On October 28, 2022, James received a right to sue letter from the EEOC.

(Cmplt. (EEOC Right to Sue Ltr.) (Dkt. No. 9-1) at 17)

---

[10]  While one of the EEO complaints alleges that James was denied overtime on "3/11/2021," it
is apparent from context that James is referring to the alleged denial of overtime on March 11,
2022.  (Id. at 5; see also Cmplt. (Dkt. No. 9-1) at 8-9 ("On March 11, 2022[,] [P]laintiff was
prohibited from working scheduled overtime by supervisor Jocelyn Peri.  Plaintiff was told it
was due to a sick call earlier in the week as per defendant Rosario Solis."))

I.    **James's Retirement**

After James received his EEOC right to sue letter, he decided to retire.  He "applied for retirement . . . effective December 30, 2022."  (Cmplt. (Dkt. No. 9-1) at 12)

On December 20, 2022, James "received a document from the [HHC] Office of Labor Relations directing [him] to report for an 'investigatory interview' under threat of additional charges."  James did not report as directed, and he alleges in the Complaint that the direction to report for an investigatory interview was an act of harassment.  (Id. at 13)

On December 21, 2022, James was directed to report for a counseling session with Mair, who was then Director of Healthcare Standards at Lincoln Medical Center.  (Id.)  James contends that the notice to report for a counseling session with Mair was an act of intimidation, because "supervision has always handled counseling, not directors" such as Mair.  (Id.)

On December 22, 2022, James "received notice of a step 1-A disciplinary conference from the office of Labor Relations."  According to James, the "charges stated appear to originate from and appear to be suspiciously similar to the workplace violence report . . . previously submitted by [James] . . . and found to be 'unsubstantiated' by [Toranzo]."  (Id.)

On December 30, 2022, James registered as a patient at Lincoln Medical Center to obtain a Covid-19 test.  (Id. at 14)  On January 13, 2023, James was at Lincoln Medical Center to secure retirement benefits.  A former colleague remarked to James that he was "Covid-[positive]."  (Id.)  James had told no one at Lincoln Medical Center about his positive test, and complains that his private health information may have been compromised and accessed by unauthorized persons.  (Id.)

## II.    PROCEDURAL HISTORY

The pro se Complaint was filed in the Supreme Court of the State of New York, New York County, on January 23, 2023.  (Cmplt. (Dkt. No. 9-1))  On February 13, 2023, Defendant removed the action to this District.  (Notice of Removal (Dkt. No. 9))  On February 17, 2023, this Court referred the case to Magistrate Judge Wang for general pretrial supervision.  (Dkt. No. 3)

On March 23, 2023, Defendant moved to dismiss under Fed. R. Civ. P. 12(b)(6).  (Def. MTD (Dkt. No. 10))  On April 3, 2023, Plaintiff moved for partial summary judgment.  (Pltf. Sum. J. Mot. (Dkt. No. 15))  On April 4, 2023, Plaintiff filed a declaration in opposition to Defendant's motion to dismiss.  (Pltf. Decl. (Dkt. No. 17))  On April 5, 2023, Plaintiff filed an amended declaration in support of his motion for partial summary judgment, and a Local Rule 56.1 statement.  (Pltf. Am. Decl. (Dkt. No. 18))

This Court referred Defendant's motion to dismiss and Plaintiff's motion for partial summary judgment to Judge Wang for an R&R on April 7, 2023.  (Dkt. No. 19)

On April 12, 2023, Defendant filed a reply in support of its motion to dismiss (Def. Reply (Dkt. No. 21)), as well as an opposition to Plaintiff's motion for partial summary judgment.  (Def. Sum. J. Opp. (Dkt. No. 22))  On April 13, 2023, Plaintiff filed a brief in support of his motion for partial summary judgment.  (Pltf. Sum. J. Br. (Dkt. No. 25))  On April 18, 2023, Plaintiff filed a reply to Defendant's response to his Local Rule 56.1 Statement.  (Pltf. R. 56.1 Reply (Dkt. No. 28))  Judge Wang construes Plaintiff's summary judgment papers as an opposition to Defendant's motion to dismiss.  (MTD R&R (Dkt. No. 51) at 2)

## III.    THE MAGISTRATE JUDGE'S R&R

On September 24, 2024, Judge Wang issued a 32-page R&R recommending that Defendant's motion to dismiss be granted.  (MTD R&R (Dkt. No. 51)  And on September 25,

2024, Judge Wang issued a 2-page R&R recommending that Plaintiff's motion for partial summary judgment be denied.  (MSJ R&R (Dkt. No. 53))

In her September 24, 2024 R&R, Judge Wang recommends that Plaintiff's Title VII and ADEA claims arising out of (1) Plaintiff's encounter with HHC Officer Torres; (2) Plaintiff's unsuccessful application for the Clerical Associate LV IV position; and (3) the denial of overtime in 2022 be dismissed for failure to exhaust administrative remedies, because Plaintiff did not present these claims in his EEOC discrimination charge.  (MTD R&R (Dkt. No. 51) at 15-18)  Judge Wang also recommends that Plaintiff's Title VII and ADEA claims arising out of the alleged timecard tampering in 2015 be dismissed as time-barred, because Plaintiff did not file an EEOC discrimination charge describing those allegations within 300 days of the incident.  (Id. at 19)

Judge Wang further recommends that Plaintiff's Title VII discrimination claim arising out of the denial of overtime in 2021 be dismissed, because Plaintiff does not sufficiently allege either an adverse employment action or facts giving rise to an inference of race discrimination.  (Id. at 19-25)

Judge Wang also recommends that Plaintiff's ADEA discrimination claim arising out of the denial of overtime in 2021 be dismissed, because Plaintiff does not sufficiently allege an adverse employment action or facts giving rise to an inference of age discrimination.  (Id. at 19-22, 25-26)

Judge Wang recommends that Plaintiff's Title VII and ADEA retaliation claims be dismissed, because Plaintiff does not adequately allege a nexus between his complaints about the 2021 denial of overtime and any alleged retaliation.  (Id. at 26-28)

Judge Wang further recommends that Plaintiff's HIPAA claim be dismissed, because HIPAA does not confer a private right of action. (Id. at 30)

In her September 25, 2024 R&R, Judge Wang recommends that Plaintiff's motion for partial summary judgment be denied as moot, given her recommendation that the Complaint be dismissed for failure to state a claim. (MSJ R&R (Dkt. No. 53) at 1)

In her R&Rs, Judge Wang notifies the parties that, "[i]n accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)," they "have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections." (MTD R&R (Dkt. No. 51) at 31-32; MSJ R&R (Dkt. No. 53) at 1) The R&Rs further state that a "failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review." (MTD R&R (Dkt. No. 51) at 32; MSJ R&R (Dkt. No. 53) at 2) (emphasis omitted) (citing, inter alia, Thomas v. Arn, 474 U.S. 140, 155 (1985))

## IV.    PLAINTIFF'S OBJECTIONS TO THE R&R

In an October 9, 2024 letter, Plaintiff provides new contact information, and states that he has not been able to view Judge Wang's R&Rs. (Oct. 9, 2024 Pltf. Ltr. (Dkt. No. 55)) Plaintiff further states: "[a]lthough I could not view the [R&Rs], my objections to the [R&Rs] are the same as stated in my opposition to [Defendant's motion to] di[s]miss [and] opposition to defendant['s] [Local Rule] 56.1 statement responses." (Id. at 1) Plaintiff did not seek an extension of time to make his objections to the R&Rs.

In an October 18, 2024 letter, Defendant reports that it has served Plaintiff with Judge Wang's R&Rs at his new address of record. (Oct. 18, 2024 Def. Ltr. (Dkt. No. 56) at 1)

## DISCUSSION

## I.    LEGAL STANDARDS

### A.    Review of Magistrate Judge's Report & Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), a party may submit objections to the magistrate judge's R&R. Any objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where a timely objection has been made to a magistrate judge's R&R, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "Objections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review[, however].'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211

(S.D.N.Y. 2013) (quoting <u>Vega v. Artuz</u>, 97CIV.3775LTSJCF, 2002 WL 31174466, at *1

(S.D.N.Y. Sept. 30, 2002)) (first alteration in <u>Phillips</u>). "To the extent . . . that the party makes

only conclusory or general arguments, or simply reiterates the original arguments, [courts] will

review the Report strictly for clear error." <u>IndyMac Bank, F.S.B. v. Nat'l Settlement Agency,</u>

<u>Inc.</u>, No. 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing

<u>Pearson-Fraser v. Bell Atl.</u>, No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6,

2003) and <u>Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan</u>, 806 F. Supp. 380, 382

(W.D.N.Y. 1992)); <u>see also</u> <u>Ortiz v. Barkley</u>, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)

("Reviewing courts should review a report and recommendation for clear error where objections

are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original

petition.") (quotation marks and citations omitted).

### B.    Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v.</u>

<u>Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the

complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007) (citing

<u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002)),

and must "draw all reasonable inferences in favor of the plaintiff." <u>Id.</u> (citing <u>Fernandez v.</u>

<u>Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement,'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557), and

does not provide factual allegations sufficient "to give the defendant fair notice of what the claim

is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Northeast Inc.</u>,

507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to establish an entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) and Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

A "pro se complaint . . . [is] interpret[ed] . . . to raise the 'strongest [claims] that [it] suggest[s].'" Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). "However, although pro se filings are read liberally and must be interpreted 'to raise the strongest arguments that they suggest,' a pro se complaint must still 'plead sufficient facts "to state a claim to relief that is plausible on its face."'" Wilder v. U.S. Dep't of Veterans Affairs, 175 F. Supp. 3d 82, 87 (S.D.N.Y. 2016) (citations omitted). Moreover, "the court need not accept as true 'conclusions of law or unwarranted deductions of fact,'" Whitfield v. O'Connell, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010) (quoting First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994)), and "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,'" even where a

plaintiff is proceeding pro se. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Iqbal, 556 U.S. at 678).

## II.    ANALYSIS

As discussed above, Judge Wang recommends that Defendant's motion to dismiss be granted (MTD R&R (Dkt. No. 51) at 1), and that James's motion for partial summary judgment be denied as moot.  (MSJ R&R (Dkt. No. 53) at 1)

Because James's objections merely "rehash[] . . . the same arguments set forth in [his] original [moving] [papers]," this Court reviews Judge Wang's R&Rs only for clear error. Phillips, 955 F. Supp. 2d at 211 (quotation marks and citations omitted) (final brackets in original).

### A.    Motion to Dismiss R&R

#### 1.    Exhaustion of Administrative Remedies and Timeliness

As Judge Wang acknowledges, "'[i]t is well established that Title VII requires a plaintiff to exhaust administrative remedies before filing suit in federal court.'"  (MTD R&R (Dkt. No. 51) at 15) (quoting Fowlkes v. Ironworkers Loc. 40, 790 F.3d 378, 384 (2d Cir. 2015)) "Because exhaustion of all administrative remedies through the EEOC is 'an essential element' of the Title VII statutory scheme, timely filing a charge with the EEOC and obtaining a Right to Sue letter is a precondition to bringing Title VII claims in federal court."  (Id.) (quoting Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001))[11]

---

[11] While the timely filing of a charge with the EEOC is also a precondition for bringing an ADEA claim, see Silva-Markus v. New York City Dep't of Educ., No. 19 CIV. 4335 (PGG), 2020 WL 5819555, at *5 (S.D.N.Y. Sept. 30, 2020), "the ADEA 'does not require an aggrieved party to receive a right-to-sue letter from the EEOC before filing suit in federal court.'" Herrnson v. Hoffman, No. 19-CV-7110 (JPO), 2020 WL 6323637, at *1 n.2 (S.D.N.Y. Oct. 28, 2020) (quoting Holowecki v. Fed. Exp. Corp., 440 F.3d 558, 563 (2d Cir. 2006)).  Instead, "[t]he

For a Title VII or ADEA claim to be timely, "a plaintiff must bring an EEOC charge within 300 days of the incident." And a Title VII plaintiff must "file an action within 90 days after receiving a Right to Sue letter." (Id. at 19) (citing Tewksbury v. Ottaway Newspapers, 192 F.3d 322, 325 (2d Cir. 1999) and Duplan v. City of New York, 888 F.3d 612, 622 (2d Cir. 2018))[12] Under Title VII and the ADEA, "claims for other new or continuing violations do not need to be separately exhausted if they are 'reasonably related' to the initial claim." (Id. at 16) (quoting Duplan, 888 F.3d at 622)

### a.    Alleged Tampering with Time Record in 2015 and 2021 Denial of Overtime

Judge Wang finds that James has exhausted his administrative remedies for discrimination and retaliation claims arising out of "two adverse actions" described in his December 6, 2021 EEOC discrimination "[c]harge": that "(1) from around mid-August [] through December 4, 2021, [James] was 'not offered' overtime; and (2) 'there was an act of retaliation that occurred in 2015' that appears to be related to an allegation that someone had 'tampered with one of [Plaintiff's] time records,['] and that several months later, he was 'suspended without pay for allegedly abandoning [his] post during the same time period in which [his] record was tampered [with].'" (See id. at 16-17) (quoting Pltf. Am. Decl. (Dkt. No. 18) at 11-12)

---

plaintiff need only wait 60 days after filing the EEOC charge" to file an ADEA claim in federal court. Id.; see also In re IBM Arb. Agreement Litig., 76 F.4th 74, 82 (2d Cir. 2023), cert. denied sub nom. Abelar v. Int'l Bus. Machines Corp., 144 S. Ct. 827 (2024) ("[A]n ADEA plaintiff must exhaust administrative remedies by first filing an EEOC charge within 300 days of the alleged unlawful practice. The plaintiff must then file an EEOC charge at least 60 days prior to initiating an ADEA suit in federal court.") (internal quotations and citations omitted).

[12] While receipt of a right to sue letter from the EEOC is not a precondition to bringing an ADEA claim, "in the event that the EEOC issues a right-to-sue letter to an ADEA claimant, the claimant must file her federal suit within 90 days after receipt of the letter" if she has not already done so. Holowecki, 440 F.3d at 563.

Judge Wang further concludes that James's claims related to the alleged denial of overtime in 2021 are timely, because he "brought an EEOC charge for the 2021 overtime claim within the 300-day timeline and . . . filed a lawsuit within 90 days [of] receiving his Right to Sue letter."  Judge Wang finds that James's claims related to the alleged timecard tampering are untimely, however, because "[h]e did not file his EEOC charge until July 2022," and the tampered timecard incident took place in 2015.  (Id. at 19)

Although Judge Wang refers to a "[c]harge" that James filed with the EEOC "on December 6, 2021" (see id. at 16) (citing Pltf. Am. Decl. (Dkt. No. 18) at 11-12), as discussed above, James filed an "inquiry" with the EEOC on that date, and not a "charge."  (See Cmplt. (Dkt. No. 9-1) at 8 ("On or around late December 2021 . . . plaintiff made an inquiry and requested the assistance of the [EEOC].");  Pltf. Am. Decl. (Dkt. No. 18) at 10-12 (form labeled "EEOC (Inquiry)" with statement that the "[s]ubmission ([i]nitial [i]nquiry) [d]ate" is "12/06/2021"))  James did not file a charge of discrimination with the EEOC until July 4, 2022. (See Cmplt. (Dkt. No. 9-1) at 12 (stating that EEOC discrimination charge was filed on July 4, 2022); id. at 16 (EEOC "Charge of Discrimination" digitally signed by James on "07/04/2022"))

Although Judge Wang erroneously refers to James's December 6, 2021 EEOC inquiry as a "[c]harge," at other points in her R&R she acknowledges that James's December 6, 2021 filing was an "inquiry" and not a charge.  (MTD R&R (Dkt. No. 51) at 9) ("The [EEOC] Inquiry, submitted on December 6, 2021, is located at ECF 18 at 10-12.")  Indeed, Judge Wang finds that the distinction between an EEOC inquiry and an EEOC charge is determinative for purposes of the exhaustion analysis here.  (Id. at 18) (stating in connection with James's claims regarding Officer Torres and his unsuccessful application for the Clerical Associate LV IV position – both discussed in James's April 18, 2022 and April 30, 2022 EEOC inquiries – that

because James did not file "a charge within 300 days of the incidents, the claims are precluded from review"; citing <u>Montgomery v. New York Presbyterian Hosp.</u>, 23-CV-9201 (PAE) (OTW), 2024 WL 4068786, at *4 (S.D.N.Y. Aug. 13, 2024), <u>rep. & rec. adopted</u>, 2024 WL 4063776 (S.D.N.Y. Sept. 4, 2024) ("the exhaustion requirement is fulfilled by filing an EEOC charge, not an initial EEOC inquiry"))

   Other courts in this Circuit have similarly concluded that a plaintiff's submission of an EEOC inquiry "cannot be construed as a Charge of Discrimination sufficient to exhaust his administrative remedies." <u>Ostrowski v. Port Auth. of NY & NJ</u>, No. 121CV3328NRMLB, 2023 WL 4975960, at *8-10 (E.D.N.Y. Aug. 3, 2023), <u>aff'd sub nom.</u> <u>Ostrowski v. The Port Auth. of New York & New Jersey</u>, No. 23-1116, 2024 WL 3219310 (2d Cir. June 28, 2024) (summary order); <u>see also</u> <u>Ashmeade v. Amazon.com</u>, No. 23-CV-4331 (KMK), 2024 WL 4266391, at *11-12 (S.D.N.Y. Sept. 23, 2024) (exhaustion analysis turns on the date plaintiff filed an EEOC charge, not the date he submitted an EEOC inquiry). Accordingly, this Court turns to James's July 4, 2022 EEOC charge.

   As discussed above, in his EEOC discrimination charge, James alleges the following:

> I am an individual of mixed races and a non-Hispanic. I am currently employed as a Clerk for the above-named entity ("Respondent"). I believe I am being discriminated against on the basis of my race because Respondent denied me over-time compar[ed] to my peers who are Hispanics. Respondent asserted [to] me that we had "adequate staffing" and that over-time was not needed, however, I later learned that my peers were offered over-time. Furthermore, after my initial complaint of being restricted to over-time, I was being retaliated against. Respondent suspended me without pay because I was alleged for having abandoned my post, but this is not true. The supervisors had tampered [with] my time-records, in which coincided during the time that I was alleged for abandoning my post. Its retaliations were acts of race and national origin discrimination because I am not Hispanic. Based on the above, I allege Respondent subjected me to discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

(Cmplt. (EEOC Charge) (Dkt. No. 9-1) at 16)  In response to a question on the complaint form as to when the discrimination took place, James wrote "12/03/2021." (Id.)

Given the allegations in James's EEOC discrimination charge, this Court finds that he exhausted his claim alleging that – on December 3, 2021 – HHC denied him overtime based on his race.[13]  That claim is also timely; James filed the EEOC charge within 300 days of December 3, 2021, and he filed his lawsuit within 90 days of receiving his right to sue letter. (See id.; Cmplt. (EEOC Right to Sue Ltr.) (Dkt. No. 9-1) at 17; Duplan, 888 F.3d at 621-22).

Furthermore, while James lists December 3, 2021 in his EEOC charge as the date that he suffered discrimination, it is apparent from the related EEOC inquiry (and from the Complaint) that the alleged denial of overtime in 2021 took place between August and December 2021.  (See Pltf. Am. Decl. (Dkt. No. 18) at 12; Cmplt. (Dkt. No. 9-1) at 6-8)  Accordingly, this Court finds no clear error in Judge Wang's conclusion that James's claim that he was denied overtime between August and December 2021 because of his race is both exhausted and timely.

As to the timecard tampering issue, James has alleged that this incident took place on June 10 and 11, 2015.  (Cmplt. (Dkt. No. 9-1) at 4)  While the timecard tampering issue is raised in James's EEOC discrimination charge (see Cmplt. (EEOC Charge) (Dkt. No. 9-1) at 16), and is thus exhausted, this incident took place in 2015 – more than six years before James filed his EEOC discrimination charge.  Accordingly – as Judge Wang concludes (MTD R&R (Dkt. No. 51) at 19) – this claim is time-barred.

---

[13]  While James alleges in his EEOC charge that he experienced "national origin discrimination" (id.), he has not presented any facts or legal theories based on his national origin.  Because of James's failure to plead supporting facts related to his national origin, to the extent that he contends that he was discriminated against on the basis of national origin, that claim will be dismissed.

Because James's EEOC charge is premised on alleged "race and national origin discrimination" (see Cmplt. (EEOC Charge) (Dkt. No. 9-1) at 16), he has not exhausted his administrative remedies with respect to any ADEA age discrimination claim. See Malloy v. Pompeo, No. 18 CIV. 4756 (PGG), 2020 WL 5603793, at *12 (S.D.N.Y. Sept. 18, 2020) (finding that disability discrimination claim alleged in lawsuit was not reasonably related to race discrimination claim alleged in complaint filed with the State Department's Equal Employment Opportunity office); Rivera v. Children's & Women's Physicians of Westchester, LLP, No. 16CIV714PGGDCF, 2017 WL 1065490, at *7-8 (S.D.N.Y. Mar. 18, 2017) (age discrimination claim alleged in lawsuit was not reasonably related to plaintiff's New York State Division of Human Rights complaint alleging discrimination based on religion and national origin; accordingly, age discrimination claim was not exhausted); Robinson v. Macy's, No. 14 Civ. 4937 (CM), 2014 WL 6997598, at *5 (S.D.N.Y. Dec. 5, 2014) (age discrimination claim was not reasonably related to race, national origin, and religion discrimination claims). Accordingly, to the extent that the Complaint asserts claims for ADEA age discrimination or retaliation, those claims will be dismissed for failure to exhaust administrative remedies. See Wickes v. Westfair Elec. Co., No. 19-CV-10673 (PMH), 2021 WL 217318, at *5 n.5 (S.D.N.Y. Jan. 20, 2021) ("The Court finds it impossible to envision how . . . an ADEA retaliation claim [could be reasonably related to claims properly exhausted in an EEOC discrimination charge] when the EEOC Charge does not describe conduct prohibited by the ADEA and does not explain how Plaintiff opposed any such discriminatory conduct. . . . Accordingly, to the extent Plaintiff asserts an ADEA retaliation claim, it is [] barred for failure to exhaust administrative remedies.").

**b.    Officer Torres Incident and Unsuccessful Job Application**

In her R&R, Judge Wang finds that James did not exhaust his claims related to his encounter with HHC Officer Torres or his unsuccessful application "for a job posting that

required Spanish language capability" – i.e., the Clerical Associate LV IV position.  (MTD R&R

(Dkt. No. 51) at 18)  While James's April 18, 2022 and April 30, 2022 EEOC inquiries discuss

these incidents (Pltf. Am. Decl. (Dkt. No. 18) at 13-19), James did not file an EEOC charge

detailing those claims within 300 days of either incident.  (MTD R&R (Dkt. No. 51) at 18)

(citing Montgomery v. New York Presbyterian Hosp., 23-CV-9201 (PAE) (OTW), 2024 WL

4068786, at *4 (S.D.N.Y. Aug. 13, 2024), rep. & rec. adopted, 2024 WL 4063776 (S.D.N.Y.

Sept. 4, 2024))  Moreover, "[t]he events [described] in these inquiries predate [James's July 4,

2022 EEOC] Charge, describe discrete events, and are not mentioned in [the July 4, 2022 EEOC]

Charge, and thus are not reasonably related" to the claims properly exhausted by the July 4, 2022

EEOC charge.  (Id.) (citing Duplan, 888 F.3d at 622)

    This Court agrees that the Officer Torres incident and James's unsuccessful

application for the Clerical Associate LV IV position are not raised in James's July 4, 2022

EEOC charge.  (See Cmplt. (EEOC Charge) (Dkt. No. 9-1) at 16)  Moreover, these claims are

not reasonably related to the claims that are addressed in the July 4, 2022 EEOC charge.  As

Judge Wang finds, James's encounter with HHC Officer Torres and his unsuccessful job

application "predate [James's July 4, 2022 EEOC] Charge, [involve] discrete events, and are not

mentioned in [James's July 4, 2022 EEEOC] Charge."  (MTD R&R (Dkt. No. 51) at 18)

Accordingly, to the extent that James's discrimination claims are premised on his encounter with

Officer Torres and his unsuccessful application for the Clerical Associate LV IV position, those

claims will be dismissed for failure to exhaust administrative remedies.

### c.    Denial of Overtime in 2022

    In her R&R, Judge Wang finds that if James "intended to raise the 2022 overtime

denials as retaliatory conduct in response to [his July 4, 2022 EEOC] Charge," that claim "would

be considered exhausted."  (Id. at 17) (citing Duplan, 888 F.3d at 622)  But if James "intended to

raise the 2022 overtime denials as a separate claim or even continuing discriminatory acts," Judge Wang concludes that he "has failed to plead how the 2022 overtime denials are 'reasonably related' to his complaints of discriminatory conduct in the 'denial' of overtime in 2021 such that they would not require separate exhaustion." (Id.)

"A claim is reasonably related to [a claim raised in an EEOC discrimination charge] 'if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015) (quoting Deravin v. Kerik, 335 F.3d 195, 200-01 (2d Cir. 2003)). Here, James asserts in his July 4, 2022 EEOC discrimination charge that he was told in 2021 that overtime was not available because his work unit had "'adequate staffing.'" (Cmplt. (EEOC Charge) (Dkt. No. 9-1) at 16) In the Complaint, James alleges that in 2022 he was again denied overtime, this time because of alleged concerns about his lack of productivity and use of sick leave. (See Cmplt. (Dkt. No. 9-1) at 8-12) While James's supervisors offered different explanations in 2021 and 2022 for denying him overtime, the Court concludes that the supervisors' 2022 conduct would "'fall within the scope of the EEOC investigation which can reasonably be expected to grow out of'" the 2021 denial of overtime that is the subject of the July 4, 2022 EEOC charge. Littlejohn., 795 F.3d at 322 (quoting Deravin, 335 F.3d at 200-01); see Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1403 (2d Cir. 1993) (while plaintiff's EEOC charge alleged that she was excluded from department reorganization meetings, "[a]n EEOC investigation [of that allegation] likely would have included an inquiry into her exclusion from [other] meetings set forth in her complaint" – "relating to her department's participation in a city-wide study of ways to improve efficiency" and "discussions about the proposed move of the department" – as "[e]xclusion from discussions about the

departmental move and about potential changes to improve efficiency are closely enough related to exclusion from 'department reorganization' meetings that it is reasonable to conclude that Plaintiff gave the EEOC notice of these incidents."), superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998). Accordingly, James has adequately pled that the 2022 overtime denial is reasonably related to the 2021 overtime denial claim that is the subject of his July 4, 2022 EEOC charge, and a Title VII discrimination claim premised on the 2022 overtime denial does not require separate exhaustion. See Littlejohn, 795 F.3d at 322.

    And to the extent that the Complaint alleges that the 2022 denial of overtime constitutes Title VII retaliation for the complaints James made about the 2021 denial of overtime, any such retaliation claim is also reasonably related to the claims that are the subject of the July 4, 2022 EEOC charge. Concey v. New York State Unified Ct. Sys., No. 08 CIV. 8858 PGG, 2011 WL 4549386, at *11 (S.D.N.Y. Sept. 30, 2011) ("'[N]umerous courts in this Circuit have found retaliation claims arising out of retaliatory conduct occurring prior to the employee's filing of an EEOC charge to be reasonably related to claims of discrimination formally included in the charge where the charge includes enough factual allegations to alert the EEOC to the possibility that the employee was subjected to retaliation.'") (alteration in Concey) (quoting Jenkins v. New York City Transit Auth., 646 F. Supp. 2d 464, 472 (S.D.N.Y. 2009)).

    Here, the July 4, 2022 EEOC charge repeatedly alleges retaliation; accordingly, the EEOC was on notice of "the possibility that [James] was subjected to retaliation." Id.; (see also Cmplt. (EEOC Charge) (Dkt. No. 9-1) at 16)  Accordingly, James has exhausted his administrative remedies with respect to any Title VII retaliation claim premised on the denial of overtime in 2022.

\*        \*        \*        \*

To summarize:  James has exhausted his administrative remedies for purposes of his Title VII race discrimination claim, and Title VII retaliation claim, to the extent those claims are premised on the denial of overtime in 2021 and 2022.  Those claims are also not time-barred.

**2.    Title VII Employment Discrimination Claim**

As Judge Wang states, "[t]o state a claim for employment discrimination [under Title VII], a plaintiff must allege that:  (i) he is a member of a protected class, (ii) he was qualified for his position, (iii) he suffered an adverse employment action, and (iv) there are facts suggesting an inference of discriminatory motivation."  (MTD R&R (Dkt. No. 51) at 19-20) (citing Littlejohn, 795 F.3d at 311)  And "[f]or [] an employment [] discrimination claim to survive a motion to dismiss, a plaintiff must allege facts that plausibly suggest that the employer discriminated against him because of his race . . . ."  (Id. at 20) (emphasis in R&R) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015))

**a.    Adverse Employment Actions**

Judge Wang first considers whether James has adequately pled that he suffered an adverse employment action under Title VII.  As to James's claim concerning the denial of overtime in 2021, Judge Wang points out that James alleges that "(1) he did not ask to work, and thus did not work, overtime for a period of four to five months from July or August to December 2021; and (2) . . . 'Hispanic' employees senior to him 'regularly' were allowed to work overtime when he was not."  (Id. at 21) (citing Cmplt. (Dkt. No. 1) at 11)  Judge Wang concludes that these allegations "are not sufficient to plead an adverse employment action."  (Id. at 22)

The Complaint alleges that in July 2021, James "was told by [his] supervisor . . . that overtime was no longer available."  During the period between July 2021 and December 15, 2021, James did not ask for overtime work and did not work overtime, even though he observed

that Hispanic employees were working overtime. On December 15, 2021, James sought overtime work, and a supervisor approved his overtime request. (See Cmplt. (Dkt. No. 9-1) at 6-8)

The Complaint further alleges that on March 11, 2022, James "was prohibited from working scheduled overtime by supervisor Jocelyn Peri" because of a sick day he had taken earlier in the week. James was denied overtime again on April 1, 2022, due to issues with his "productivity." On May 19, 2022, James was told at a counseling session that he would be eligible for overtime after a two-to-three week "period of good attendance was completed." At a follow-up counseling session on June 23, 2022, however, "additional time" was added "to the overtime restriction." (Id. at 8-12) Finally, James alleges in the Complaint alleges that he "has been financially damaged . . . in the amount of at least $20,000.00 due to lost overtime wages." (See id. at 10)

"[W]hile 'denial of overtime can constitute an adverse employment action'" for purposes of a Title VII discrimination claim, Lee v. Starwood Hotels & Resorts Worldwide, Inc., No. 14 CIV. 5278 (KPF), 2016 WL 3542454, at *11 (S.D.N.Y. June 22, 2016) (quoting Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 589 (S.D.N.Y. 2012)), "for denial of overtime to amount to an adverse employment action, there must also be a 'material detriment as a result of being denied overtime, such as opportunities for career advancement. [C]onclusory allegation[s] that [a plaintiff] was denied overtime, without more, [are] insufficient to substantiate an adverse employment action.'" Id. (quoting Henry v. NYC Health & Hosp. Corp., 18 F. Supp. 3d 396, 406 (S.D.N.Y. 2014)) (internal citations omitted); see also Suarez v. Am. Stevedoring, Inc., No. 06CV6721KAMRER, 2009 WL 3762686, at *12 (E.D.N.Y. Nov. 10, 2009) ("Generally, the denial of . . . overtime opportunities constitutes an adverse employment action [under Title VII],

especially when it bears on either plaintiff's opportunities for professional growth and career advancement or directly on plaintiff's compensation. Where, however, a plaintiff cannot establish material harm from such denials, there is no adverse employment action.") (internal citations omitted).

Here, James pleads that he was materially harmed by being repeatedly denied overtime in 2021 and 2022, and that he "has been financially damaged . . . in the amount of at least $20,000.00 due to lost overtime wages." (Cmplt. (Dkt. No. 9-1) at 10) These allegations are sufficient to plead an adverse employment action under Title VII. Henry, 18 F. Supp. 3d at 406 ("Courts in this Circuit have found that the denial of overtime, where accompanied by a loss in compensation or other material harm, may constitute an adverse employment action."); Little v. Nat'l Broad. Co., 210 F. Supp. 2d 330, 379 (S.D.N.Y. 2002) ("evidence that [plaintiff] incurred an actual loss in income because of lost overtime and that he was forced to work undesirable shifts with an erratic schedule. . . . , if true, could prove that [plaintiff] was subject to an adverse employment action" under Title VII); see also Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (plaintiff's allegation that "she was not allowed to earn overtime pay," inter alia, was sufficient to satisfy the adverse employment action element of a prima facie discrimination claim analyzed under the same burden-shifting framework as Title VII).

b.    **Inference of Race Discrimination**

Judge Wang next considers whether James has pled facts giving rise to an inference of race discrimination under either a disparate treatment or disparate impact theory. (MTD R&R (Dkt. No. 51) at 22-25) Judge Wang explains that "'[a] plaintiff may support an inference of race discrimination'" through disparate treatment "'by demonstrating that similarly situated employees of a different race were treated more favorably.'" "'In order to make such a showing, the plaintiff must compare herself to employees who are "similarly situated in all

material respects.'"'" (Id. at 22-23) (quoting Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999))  To make a showing of disparate impact, a plaintiff "must allege that his employer 'uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" (Id. at 24) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i))  "This requires:  (i) identifying a specific employment practice or policy; (ii) demonstrating that a disparity exists; and (iii) alleging a causal relationship between the two." (Id.) (citing Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 151 (2d Cir. 2012))

### i.  Disparate Treatment Claim

As to James's Title VII claim premised on the denial of overtime in 2021, Judge Wang finds that James has not adequately alleged disparate treatment.  Judge Wang notes that while James "asserts generally that 'Hispanic supervisors from the previous tour' 'regularly' worked overtime and that the policy, generally, was for clerks to have overtime approved before supervisors" (id. at 23) (quoting Cmplt. (Dkt. No. 1-1) at 9), "[i]t is not clear from the pleading whether the [Hispanic supervisors working overtime] were similarly situated in all material respects."  (Id.)  "The other employees were supervisors, and thus did not have the same seniority," and James has "not pleaded that they were performing the same work . . . during the same time period that [James] asserts that he was restricted from overtime."  (Id.) (citing Wegmann v. Young Adult Inst., Inc., 15-CV-3815 (KPF), 2016 WL 827780, at *10 (S.D.N.Y. Mar. 2, 2016))  Furthermore, "with the exception of 'one of the [Tour 1] employees working overtime' in December 2021, [James] does not allege that anyone else, Black or not, worked overtime in the four-month period [James] asserts he was not able to work overtime."  (Id. at 24)

This Court agrees that James has not adequately alleged that the Hispanic supervisors who were approved for overtime in 2021 were similarly situated to him. Acknowledging James's assertion that he – as a line employee – was entitled to a preference for

the assignment of overtime work, James must nonetheless plead facts about his comparators' position, seniority, job responsibilities, performance, and length of experience. See, e.g., Vora v. New York City Dep't of Educ., No. 22CIV10891PGGSDA, 2024 WL 1116312, at *8 (S.D.N.Y. Mar. 14, 2024) (allegations that "(1) Plaintiff and her [white] colleague co-teach a class; (2) they were 'observed and rated' by [their supervisor] 'at the same time'; and (3) they used a 'similar format' in seeking sick leave by email . . . . are not sufficient to demonstrate that Plaintiff and her co-teacher are similarly situated.") (internal citations omitted); Cruz v. Loc. 32BJ, No. 22 CIV. 3068 (PGG) (SDA), 2024 WL 4357036, at *9 (S.D.N.Y. Sept. 30, 2024) (plaintiff did not "plead facts to establish that she and [her comparator] were similarly situated with respect to relevant experience and/or length of employment" and thus did not establish a prima facie case of disparate treatment).

For the same reason, James does not adequately allege disparate treatment as to his Title VII claim premised on the denial of overtime in 2022:  he does not plead any facts about co-workers who were permitted to work overtime in 2022, when James was denied the opportunity to work overtime due to, inter alia, alleged concerns about his "productivity" (Cmplt. (Dkt. No. 9-1) at 10), and thus does not adequately allege that comparators who were allowed to work overtime in 2022 were similarly situated to him.  See, e.g., Vora, 2024 WL 1116312, at *8; Cruz, 2024 WL 4357036, at *9.  Accordingly, this Court agrees that James has not adequately pled that he suffered disparate treatment based on his race.

### ii.    Disparate Impact Claim

As to James's Title VII claim premised on the denial of overtime in 2021 and 2022, Judge Wang concludes that he "has not pleaded disparate impact of the facially neutral 2004 ['Clerical Overtime'] Policy or the 'Time and Leave Policy' or that they were being used as a pretext to deny him overtime to which he was otherwise entitled" in 2021 and 2022.  (MTD

R&R (Dkt. No. 51) 24-25)  Judge Wang goes on to say that James "does not allege that either

policy affected Black employees like him disproportionately, or that the 'Hispanic' employees

who regularly worked overtime [in 2021, when James's overtime was restricted] – even if they

were similarly situated – should have been denied overtime under the Policy but were not."  (Id.

at 25) (citing African Am. Legal Defense Fund v. N.Y. State Dep't of Educ., 8 F. Supp. 2d 330,

339 (S.D.N.Y. 1998))

       This Court agrees that James has not adequately pled that the 2004 "Clerical

Overtime" or "Time and Leave" policies had a disparate impact on Black employees, or that

these policies were used as a pretext to deny him overtime to which he was otherwise entitled.

Nor does James allege that Hispanic employees who were permitted to work overtime in 2021

should have been denied overtime under those policies.  (See Cmplt. (Dkt. No. 9-1); Pltf. Am.

Decl. (Dkt. No. 18))  Accordingly, this Court finds no clear error in Judge Wang's conclusion

that James has not adequately pled that he suffered disparate impact based on his race.  See

Clarke v. Leading Hotels of the World, Ltd., No. 15-CV-0008 JMF, 2015 WL 6686568, at *3

(S.D.N.Y. Oct. 29, 2015) ("To survive a motion to dismiss, a disparate impact claim must

identify a specific employment practice that causes a disparate impact.  But Plaintiff [does not

identify] a disparate impact on a protected group.") (citing Swierkiewicz v. Sorema N. A., 534

U.S. 506, 512 (2002) and Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998)).

*    *    *    *

       This Court agrees with Judge Wang that James has not pled facts supporting an

inference of discriminatory animus.  Accordingly, James's Title VII race discrimination claim

will be dismissed.

### 3.    Retaliation Claims

James contends that after he (1) submitted his December 6, 2021 EEOC inquiry alleging that he was discriminatorily denied overtime in 2021; and (2) made similar complaints to the HHC Office of Corporate Compliance and Executive Compliance/Privacy Officer Ilene Wikler on December 10, 2021 – HHC retaliated against him.  (See Cmplt. (Dkt. No. 9-1) at 7-13; Pltf. Am. Decl. (Dkt. No. 18) at 10-12)  According to James, HHC's retaliatory acts include (1) the denial of overtime on March 11, 2022 and April 1, 2022; (2) the March 20, 2022 notice that he would have to be "on time for overtime" going forward, which represented a change from the previous overtime policy; (3) a false explanation for the cancellation of his March 11, 2022 overtime; and (4) the April 7, 2022 and April 11, 2022 counseling notices.  (See Cmplt. (Dkt. No. 9-1) at 8-11)

James further contends that – after he submitted two EEO complaints on April 12, 2022, including a complaint that he had been denied overtime in 2022 on the basis of his race – he suffered the following additional acts of retaliation:  (1) on May 8, 2022, HHC director Steve Mair denied James's request for assistance "in managing discrimination" at Lincoln Medical Center; and (2) on June 23, 2022, Mair lengthened a restriction on James's ability to work overtime.[14]  (See id. at 11-12; Pltf. Am. Decl. (Dkt. No. 18) at 4-7)

James further contends that, after he submitted another EEO complaint on June 29, 2022, and filed his July 4, 2022 EEOC charge of discrimination – both of which asserted that

---

[14]  As discussed below, James's allegations regarding Mair's extension of James's overtime restriction could also be construed as alleging retaliation for James's request to Mair for help "in managing discrimination."  See Daniel v. ABM Indus., Inc., No. 16-CV-1300 (RA), 2017 WL 1216594, at *12 (S.D.N.Y. Mar. 31, 2017) ("[F]ailure to investigate [a plaintiff's complaint of discrimination] can constitute an adverse employment action 'if the failure is in retaliation for some separate, protected act by the plaintiff'") (quoting Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010)).

James had been denied overtime as the result of race discrimination – he suffered the following additional acts of retaliation: (1) the HHC Office of Labor Relations directed him to report for an investigatory interview on December 20, 2022, and warned of disciplinary charges if he did not report as directed; (2) he was directed to report for a counseling session with Mair on December 21, 2022; and (3) on December 22, 2022, the HHC Office of Labor Relations sent James notice of a disciplinary conference to be conducted on January 12, 2023. (See Cmplt. (Dkt. 9-1) at 12-13, 16; Pltf. Am. Decl. (Dkt. No. 18) at 8-9; Profeta Decl., Ex. B (Dec. 22, 2022 Notice) (Dkt. No. 11-2) at 2)

Judge Wang concludes that James has not stated a retaliation claim, because he does not "assert that [the denial of overtime or other disciplinary actions] constitute retaliation 'reasonably related' to . . . Plaintiff's complaints related to the 2021 'denial' of overtime and subsequent filing of an EEOC inquiry or charge, which, drawing all reasonable inferences in [James's] favor, are likely the only protected activities that could support a retaliation claim at all." (MTD R&R (Dkt. No. 51) at 26-27) (citing Kessler v. Westchester Cty. Dept. of Soc. Servs., 461 F.3d 199, 210 (2d Cir. 2006) and Payne v. Cornell Univ., 18-CV-1442 (GTS/ML), 2021 WL 39684, at *18 (N.D.N.Y. Jan. 5, 2021)) "Indeed, [James] filed EEOC Inquiries about particular incidents in the same time frame but did not allege in those inquiries that those incidents were retaliatory, nor did he allege that any later incidents constituted retaliation for any prior protected activity." (Id. at 27)

Judge Wang also states that,

although Plaintiff uses the word "retaliation" liberally concerning events in 2022 that he claims are discriminatory, at best Plaintiff asserts that some of the overtime denials in March through June 2022, and the related counseling sessions, occurred after Plaintiff had sought "assistance in managing discrimination previously." Plaintiff does not plead any facts to suggest that the overtime denials in 2022 are related in any way to the 2021 overtime "denial," such as that they were carried out by the same individual (Peri), or

were carried out in the same discriminatory manner, nor does he assert that the 2022 overtime denials were in retaliation for prior allegations of discrimination or that they were related to the filing of the [December 6, 2021 EEOC] Inquiry.  In order to state a claim for retaliation, Plaintiff would have to allege facts to identify the protected activity and a nexus between the protected activity and the denial of overtime.

(Id. at 28) (internal citations omitted)

To make out a prima facie case of retaliation under Title VII, a plaintiff must allege facts that show "'(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" Littlejohn, 795 F.3d at 316 (quoting Hicks v. Barnes, 593 F.3d 159, 164 (2d Cir. 2010))

"Protected activity" for purposes of a retaliation claim is "'action taken to protest or oppose statutorily prohibited discrimination.'" Natofsky v. City of New York, 921 F.3d 337, 354 (2d Cir. 2019) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)). "Complaining about general unfairness, unaccompanied by any indication that plaintiff's protected class status caused the unfairness, does not qualify as protected activity." Batiste v. City Univ. of N.Y., 16-CV-3358 (VEC), 2017 WL 2912525, at *10 (S.D.N.Y. July 7, 2017) (citing, inter alia, Rojas v. Roman Cath. Diocese of Rochester, 660 F.3d 98, 107-08 (2d Cir. 2011)). "In order to bring Title VII retaliation claims, . . . the retaliation must occur as a result of reporting discrimination based on a [characteristic protected by Title VII]." Chacko v. Off. of New York State Comptroller, No. 20-CV-10697 (VEC), 2021 WL 5605063, at *5 n.6 (S.D.N.Y. Nov. 30, 2021) (citing Ramsy v. Marriot Int'l, Inc., 952 F.3d 379, 391 (2d Cir. 2020)).

In the context of a Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548

U.S. 53, 57 (2006)). "'This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination' and is not limited to discriminatory actions that affect the terms and conditions of employment." Richards v. New York City Dep't of Educ., 2022 WL 329226, at *16 (S.D.N.Y. Feb. 2, 2022) (quoting Vega, 801 F.3d at 90).

"[I]t is important[, however,] to separate significant from trivial harms" when analyzing a retaliation claim. Burlington, 548 U.S. at 68. "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id.

For purposes of pleading a retaliation claim, "[c]ausation can be sufficiently established through temporal proximity." Craven v. City of New York, No. 20-CV-8464 (ER), 2023 WL 3097434, at *5 (S.D.N.Y. Apr. 26, 2023) (citing Vega, 801 F.3d at 92). "Although 'temporal proximity alone will not be enough to support [a retaliation] claim on summary judgment,' it is sufficient at the pleading stage." Ahmad v. New York City Health & Hosps. Corp., No. 20 Civ. 675 (PAE), 2021 WL 1225875, at *27 (S.D.N.Y. Mar. 31, 2021) (internal citation omitted) (quoting Huda v. New York City Health & Hosps. Corp., No. 19 Civ. 11556 (AJN), 2021 WL 1163975, at *8 (S.D.N.Y. Mar. 26, 2021)). "There is no firm outer limit to the temporal proximity required, but most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." De Figueroa v. New York, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing Walder v. White Plains Bd. of Educ., 738 F. Supp. 2d 483, 503-04 (S.D.N.Y. 2010) (collecting cases)); Graham v. Macy's, Inc., No. 14-CV-3192 (PAE), 2016 WL 354897, at *9 (S.D.N.Y. Jan. 28, 2016) ("[C]ourts in this Circuit generally hold that a gap longer than two months severs the inferred causal relationship."), aff'd, 675 F. App'x 81 (2d Cir. 2017); Ragin v. E. Ramapo Cent. Sch. Dist., No. 05 Civ. 6496 (PGG), 2010 WL

1326779, at *24 (S.D.N.Y. Mar. 31, 2010) ("[M]any courts in this circuit have held that periods of two months or more defeat an inference of causation.").

As an initial matter, this Court agrees with Judge Wang that James's "complaints related to the 2021 'denial' of overtime [to the HHC Office of Corporate Compliance and Executive Compliance/Privacy Officer Ilene Wikler on December 10, 2021, the] . . . filing of [the December 6, 2021 EEOC inquiry, and the filing of the July 4, 2022 EEOC] charge" are protected activities that could support a retaliation claim. (MTD R&R (Dkt. No. 51) at 26-27)

As to causation, James alleges that he was denied overtime on March 11, 2022 (Cmplt. (Dkt. No. 9-1) at 8), more than three months after his December 6, 2021 EEOC inquiry and his December 10, 2021 complaints to the Office of Corporate Compliance and Executive Compliance/Privacy Officer Wikler. Given the more than three-month gap between James's protected activity and the alleged adverse action, this Court agrees with Judge Wang that he has not "allege[d] facts to identify . . . a nexus between the protected activity and the denial of overtime." (MTD R&R (Dkt. No. 51) at 28); see also De Figueroa, 403 F. Supp. 3d at 157; Walder, 738 F. Supp. 2d at 503-04 (collecting cases)); Graham, 2016 WL 354897, at *9; Ragin, 2010 WL 1326779, at *24.

It follows that the more than three-month gap between James's December 6, 2021 EEOC inquiry and December 2021 internal complaints on the one hand, and the other alleged retaliatory acts on the other – including the March 20, 2022 notice that he would have to be "on time for overtime" going forward; the March 24, 2022 allegedly false explanation for the cancellation of his March 11, 2022 overtime; the denial of overtime on April 1, 2022; the April 7, 2022 and April 11, 2022 counseling notices; Mair's May 8, 2022 denial of James's request for assistance "in managing discrimination"; and Mair's June 23, 2022 extension on James's ability

to work overtime (see Cmplt. (Dkt. No. 9-1) at 9-12) – is also too long to permit an inference of

retaliatory animus.  Similarly, the more than three-month gap between James's July 4, 2022

EEOC charge and the alleged retaliatory acts that took place in December 2022 – the December

20, 2022 notice to report for an investigatory interview with the HHC Office of Labor Relations;

the December 21, 2022 direction to report for a counseling session with Mair; and the December

22, 2022 notice of a disciplinary conference from the Office of Labor Relations (see id. at 13) –

is too long to permit an inference of retaliatory animus.

   As discussed above, however, on April 12, 2022 and June 29, 2022, James filed

complaints with HHC's Office of Equal Employment Opportunity alleging that he had been

denied overtime based on racial discrimination, and on May 8, 2022, he asked director Mair for

help "in managing [the] discrimination."[15]  (See id. at 11; Pltf. Am. Decl. (Dkt. No. 18) at 6-9)

James's EEO complaints and request to Mair constitute protected activity for purpose of a

retaliation claim, see Williams v. City of New York, No. 20-CV-8622 (JPO), 2022 WL 976966,

at *5 (S.D.N.Y. Mar. 31, 2022) ("The internal EEO complaint, which alleges

race . . . discrimination, reflects protected activity under [Title VII]."); Pelgrift v. 335 W. 41st

Tavern Inc., No. 14-CV-8934 (AJN), 2017 WL 4712482, at *12 (S.D.N.Y. Sept. 28, 2017)

("informal complaints to supervisors about purportedly discriminatory activity are also protected

activity" for purposes of a Title VII retaliation claim) (citing Thomas v. iStar Fin., Inc., 438 F.

Supp. 2d 348, 364 (S.D.N.Y. 2006)), and accordingly this Court must perform a temporal

proximity analysis as to this protected activity.

---

[15]  James also filed an EEOC inquiry on April 30, 2022, concerning a promotion he had applied
for but not obtained at Lincoln Medical Center.  (Pltf. Am. Decl. (Dkt. No. 18) at 17-19)  This
claim was not included in James's later EEOC charge, however, and is not "reasonably related"
to claims that were exhausted.  Accordingly, it is an unexhausted claim.

The sequence of events is as follows:  On April 12, 2022, James filed a complaint with HHC's EEO office claiming that he had been denied overtime based on racial discrimination.  On May 8, 2022, James asked Mair for his assistance in addressing the discrimination, and Mair rejected his request.  On June 23, 2022 – five weeks later – Mair lengthened a restriction on James's ability to work overtime.  Whether the Court looks to the April 12, 2022 EEO complaint or James's May 8, 2022 request to Mair, the June 23, 2022 extension of the restriction on James' ability to work overtime occurred close enough in time to demonstrate temporal proximity for purposes of a retaliation claim.  See Crawford v. Bronx Cmty. Coll., No. 22 CIV. 1062 (PGG) (SLC), 2024 WL 3898361, at *18 (S.D.N.Y. Aug. 21, 2024) ("A two-month period between protected activity and an adverse employment action is short enough to support an inference of retaliatory intent.").

The Court concludes that James has adequately pled a prima facie case of retaliation under Title VII premised on the following:  (1) his April 12, 2022 EEO complaint alleging race discrimination, which constitutes protected activity, see Williams, 2022 WL 976966, at *5; (2) his May 8, 2022 request to Mair for assistance in addressing race discrimination, which constitutes protected activity, see Pelgrift, 2017 WL 4712482, at *12; (3) Defendants' knowledge of this protected activity, Risco v. McHugh, 868 F. Supp. 2d 75, 112 (S.D.N.Y. 2012) ("The Second Circuit has established that general corporate knowledge is sufficient to satisfy the second element of a prima facie case of retaliation," which can be established by plaintiff "filing . . . [an] informal EEO complaint") (citing Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) and Alston v. New York City Transit Auth., 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998)); (4) Mair's denial of James's request for help in addressing the alleged discrimination, which constitutes an adverse action for purposes of a

retaliation claim, see Daniel v. ABM Indus., Inc., No. 16-CV-1300 (RA), 2017 WL 1216594, at

*12 (S.D.N.Y. Mar. 31, 2017) ("[F]ailure to investigate [a plaintiff's complaint of

discrimination] can constitute an adverse employment action 'if the failure is in retaliation for

some separate, protected act by the plaintiff'") (quoting Fincher v. Depository Tr. & Clearing

Corp., 604 F.3d 712, 721 (2d Cir. 2010)); (5) Mair's extension of James's overtime restriction,

which constitutes an adverse action for purposes of a retaliation claim, see Napolitano v. Tchrs.

Coll., Columbia Univ., No. 19-CV-9515 (MKV), 2023 WL 1965690, at *6 (S.D.N.Y. Feb. 13,

2023) ("It is clear that a 'deprivation of the opportunity to earn overtime' can constitute an

adverse employment action'" for purposes of a retaliation claim) (quoting Lambert v. Trump

International Hotel & Tower, 304 F. Supp. 3d 405, 419 (S.D.N.Y. 2018)); and (6) causation

demonstrated through temporal proximity, see Crawford, 2024 WL 3898361, at *18.

   Accordingly, Defendant's motion to dismiss James's Title VII retaliation claim

will be denied.

   **4.**  **HIPAA Claim**

   In the Complaint, James asserts that his rights under HIPAA were violated by

disclosure of his COVID-19 test results. (Cmplt. (Dkt. No. 9-1) at 14) Judge Wang recommends

that this claim be dismissed, because "[t]he Second Circuit has held . . . that HIPAA does not

confer a private right of action – express or implied – on the person whose medical records may

have been disclosed in violation of HIPAA." (MTD R&R (Dkt. No. 51) at 30) (citing Meadows

v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020))

   This Court agrees that HIPAA does not confer a private right of action.

Meadows, 963 F.3d at 244 ("HIPAA confers no private cause of action, express or implied").

Accordingly, James's HIPAA claim will be dismissed.

**B.**    **Motion for Partial Summary Judgment R&R**

James moves for partial summary judgment as to his "[C]omplaint from [Paragraph] #14-[Paragraph] #50 pursuant to Rule 56(a) of Federal Rules of Civil Procedure[]." (Pltf. Sum. J. Mot. (Dkt. No. 15); see Cmplt. (Dkt. No. 9-1) at 6-15)  The cited paragraphs include most of James's claims, both for discrimination and retaliation.

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  In deciding a summary judgment motion, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001).

In recommending that James's motion for partial summary judgment be denied as moot (MSJ R&R (Dkt. No. 53) at 1), Judge Wang cites her recommendation that James's Complaint be dismissed in its entirety for failure to state a claim.  (MTD R&R (Dkt. No. 51))  As to the claims that this Court has agreed should be dismissed for failure to state a claim – including James's Title VII discrimination claim, ADEA discrimination and retaliation claims, and HIPAA claim – Judge Wang's recommendation is adopted, and James's motion for partial summary judgment will be denied as moot. See Chandler v. Int'l Bus. Machines Corp., No. 21-CV-6319 (JGK), 2022 WL 2473340, at *3 (S.D.N.Y. July 6, 2022), aff'd, No. 22-1733, 2023 WL 4987407 (2d Cir. Aug. 4, 2023) (summary order) ("Where, as here, a motion for summary judgment and a motion to dismiss are both pending, the court may grant the motion to dismiss

and deny the motion for summary judgment as moot if the court concludes that the plaintiff's complaint fails to state a claim.").

However, this Court has concluded that James's Title VII retaliation claim survives Defendant's motion to dismiss. As to that claim, James's motion for partial summary judgment will nonetheless be denied, albeit without prejudice.

"'Normally . . . , summary judgment is inappropriate before the parties had an opportunity for discovery.'" Barrios v. Bello, No. 20 CIV. 5228 (JPC), 2021 WL 1630594, at *3 (S.D.N.Y. Apr. 27, 2021) (quoting Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo., 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006)); see also Casmento v. Volmar Constr., Inc., No. 20-CV-0944 (LJL), 2021 WL 1062343, at *3 (S.D.N.Y. Mar. 19, 2021) ("Summary judgment is ordinarily disfavored prior to discovery having been conducted."); Elliott v. Cartagena, 84 F.4th 481, 493 (2d Cir. 2023) ("When a party has not had any opportunity for discovery, summary judgment is generally premature.") (emphasis in original) (citing Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996)). Here, Defendant has not had the opportunity to conduct discovery.

Moreover, a Title VII retaliation claim turns on issues of "'retaliatory intent,'" Joseph v. Marco Polo Network, Inc., No. 09 CIV. 1597 DLC, 2010 WL 4513298, at *17 (S.D.N.Y. Nov. 10, 2010) (quoting Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002)), and "[r]etaliatory motive is a question of fact," Long v. Marubeni Am. Corp., No. 05 CIV. 0639 (GEL), 2006 WL 547555, at *2 (S.D.N.Y. Mar. 6, 2006), that ordinarily is not susceptible to resolution as a matter of law. See Colon v. New York City Hous. Auth., No. 16-CV-4540 (VSB), 2021 WL 2159758, at *13 (S.D.N.Y. May 26, 2021) (as to a Title VII retaliation claim, "'[o]rdinarily, plaintiff's evidence establishing a prima facie case and defendant's production of a nondiscriminatory reason for the [adverse] employment action raise

a question of fact to be resolved by the factfinder after a trial'") (quoting Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000)); Dortz v. City of New York, 904 F. Supp. 127, 148 (S.D.N.Y. 1995) (as to a Title VII discrimination claim, "[w]here a Title VII defendant's intent is at issue, summary judgment is generally inappropriate."); Rosen v. Thornburgh, 928 F.2d 528, 533 (2d Cir. 1991) (as to a Title VII discrimination claim, "in a Title VII action, where a defendant's intent and state of mind are placed in issue, summary judgment is ordinarily inappropriate."); MacMillan v. Millennium Broadway Hotel, 873 F. Supp. 2d 546, 557 (S.D.N.Y. 2012) ("The issue of intent in a [Title VII] discrimination case presents a classic jury question.").

Accordingly, James's motion for partial summary judgment will be denied without prejudice.

## C.    Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion in determining whether to grant leave to amend." Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000).  "When a liberal reading of [a pro se] complaint gives any indication that a valid claim might be stated," the complaint "should not be dismiss[ed] without granting leave to amend at least once." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotations and citations omitted).

Leave to amend may properly be denied, however, in cases of "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191

(2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)); <u>see</u> <u>Terry v. Inc. Vill. of</u>

<u>Patchogue</u>, 826 F.3d 631, 633 (2d Cir. 2016) ("Although district judges should, as a general

matter, liberally permit <u>pro</u> <u>se</u> litigants to amend their pleadings, leave to amend need not be

granted when amendment would be futile.").

       Here, Judge Wang recommends that James be permitted to "replead only his

<u>exhausted</u> <u>employment</u> <u>discrimination</u> <u>claim(s)</u>, which pertains to the lack of overtime in August

through December of 2021, <u>and</u> <u>any</u> <u>retaliation</u> <u>claims</u> <u>reasonably</u> <u>related</u> <u>to</u> <u>that</u> <u>lack</u> <u>of</u>

<u>overtime</u>." (MTD R&R (Dkt. No. 51) at 31) (emphasis in original)  Judge Wang also states that

> [t]o the greatest extent possible, Plaintiff's amended complaint must allege <u>facts</u> to
> support his claims, including:
>
> > (1) Identifying the dates during the time period between August and December
> > 2021, if any, that he sought to work overtime and was denied overtime;
> >
> > (2) Identifying and describing the specific instances during that time period that
> > similarly-situated individuals who were not Black and/or under 40 years old
> > worked overtime;
> >
> > (3) Identifying how those individuals were similarly situated (for example,
> > explaining whether they held the same position, performed the same duties,
> > and worked on the same tour); and
> >
> > (4) If Plaintiff seeks to bring a retaliation claim, he must identify the protected
> > activity, the retaliatory acts, and how the alleged retaliation is "reasonably
> > related" to the exhausted claim.

(<u>Id.</u>) (internal citation omitted) (emphasis in original)

       This Court finds that amendment would be futile as to James's (1) Title VII

claims arising out of his dispute with HHC Officer Torres and his unsuccessful application for

the Clerical Associate LV IV position, because those claims were not raised before the EEOC

and thus have not been exhausted; (2) ADEA discrimination and retaliation claims, because

those claims were not raised before the EEOC and thus have not been exhausted; and (3) HIPAA claim, because HIPAA does not confer a private right of action.

As to James's Title VII race discrimination claim arising out of the denial of overtime in 2021 and 2022, leave to amend is granted, because it is not clear that any amendment would be futile.

## CONCLUSION

Judge Wang's R&Rs (Dkt. Nos. 51, 53) are adopted in part as set forth above. Defendant's motion to dismiss (Dkt. No. 10) is granted in part and denied in part. The motion is granted as to all claims other than Plaintiff's Title VII retaliation claim, as to which the motion is denied. Plaintiff's motion for partial summary judgment (Dkt. No. 15) is denied as moot as to all claims other than Plaintiff's Title VII retaliation claim. As to Plaintiff's Title VII retaliation claim, Plaintiff's motion for partial summary judgment is denied without prejudice.

Plaintiff is granted leave to move to amend his Title VII race discrimination claim arising out of the denial of overtime in 2021 and 2022. Any motion seeking leave to file an Amended Complaint will be filed by **April 28, 2025**. The proposed Amended Complaint must be attached as an exhibit to any such motion.

The Clerk of Court is directed to terminate the motions (Dkt. Nos. 10, 15).

Dated:  New York, New York
        March 31, 2025

                            SO ORDERED.

                            _____
                            Paul G. Gardephe
                            United States District Judge